Melvin **FINSTROM**, Plaintiff and Appellant,

v.

**FIRST STATE BANK OF BUXTON,** Defendant and Appellee.

Civ. No. 940189.

Supreme Court of North Dakota.

Dec. 20, 1994.

Richard Henderson (argued), Nilles, Hansen & Davies, Ltd., Fargo, for plaintiff and appellant.

John S. Foster (argued), Vaaler, Warcup, Woutat, Zimney & Foster, Grand Forks, for defendant and appellee.

NEUMANN, Justice.

Melvin Finstrom appeals from summary judgment dismissing his claims for royalties and damages stemming from the sale of gravel originally removed from his land. We reverse and remand.

■ The facts as alleged in the pleadings are complex. Because this is an appeal from summary judgment, we view the evidence in a light most favorable to the party against whom summary judgment is sought, in this case, Finstrom. *Binstock v. Tschider,* 374 N.W.2d 81, 83 (N.D.1985). The record indicates that Finstrom owned a parcel of land containing gravel deposits. In 1979 he entered into a lease with Wilson Jeffers (Jeffers) and Dale Schipper (Schipper) for the removal of gravel and reclamation of the land in return for royalties due and payable on the 15th day of the month following the sale of the severed gravel. The amount of royalty was to be determined by reference to the sales tickets generated when Jeffers and Schipper sold the extracted gravel. Jeffers purchased Schipper's interest in the lease in 1980. Jeffers extracted the gravel, reclaimed the land, and piled the gravel on the reclaimed land sometime around 1980. Jeffers then pledged his interest in the piled gravel as security for a loan extended by the First State Bank of Buxton (Bank). In 1982 Jeffers died and his estate surrendered his rights in the gravel to the Bank as settlement for the outstanding balance of the loan. In August of 1984 the Bank, as assignee of Jeffers' interest, exercised its option under the gravel lease to renew for another five years.

After Jeffers pledged the gravel as security, and before Jeffers' death, Finstrom borrowed money from the First State Bank of Buxton, and gave a mortgage on his property from which the gravel was extracted. Finstrom eventually defaulted on the loan, the mortgage was foreclosed, and the Bank purchased the land at the sheriff's sale. The one-year redemption period expired in July 1986, whereupon the Bank became the sole owner of both the Finstrom property as well as Jeffers' rights in the severed gravel.

Finstrom commenced this action by service of a summons and complaint October 1, 1992. The complaint, after being amended, alleged three different counts. Count one is contractual in nature and claims that the Bank breached its contract to pay royalties within one month after the sale of gravel. The complaint alleges that the first gravel was sold in the summer of 1989. Count two is based on conversion, and alleges the Bank converted Finstrom's interest in the gravel when it continued to sell the gravel and refused to pay the royalties. Count three alleges that the Bank breached its duty when it failed to diligently market the gravel.

All were dismissed in response to the Bank's summary judgment motion. The trial court found that the claims had accrued upon severance of the gravel, and therefore must be dismissed because the statute of limitations had expired prior to commencement of this action.

Finstrom appeals, claiming that for counts one and two (his contract and conversion claims) the statute had not yet expired, and

for count three (his breach of duty to diligently market claim) there existed insufficient facts to support the court's conclusion that the statute had expired. We agree.

### I. Statute of Limitations for Finstrom's Contract and Conversion Claims

■ Before determining whether the statute of limitations had expired on Finstrom's contract and conversion claims, we must determine what interest Finstrom appears to hold in order to determine when his rights accrued. From the facts as set forth in the record, it appears that Finstrom had a right to royalties under the lease with Jeffers for gravel mined on his land. We have held "that an unaccrued oil and gas royalty is an interest in real property." *GeoStar Corp. v. Parkway Petroleum, Inc.*, 495 N.W.2d 61, 67 (N.D.1993). The gravel royalties in the instant case are analogous to petroleum royalties. *Compare* NDCC § 38–11–01(2) (1987) *with* NDCC § 38–11.1–03(5) (1987) (recognizing both oil and gas as well as all other "valuable inert lifeless substance[s] ... found within the earth" as minerals yet promulgating different regulations for their extraction); *see also* NDCC § 47–10–24 (Supp.1993) (recognizing that when specifically included, gravel is treated like all other minerals).[1] Before severance of the gravel, the unaccrued royalty was an interest in real property. *GeoStar Corp.*, 495 N.W.2d at 67; *see also Corbett v. La Bere*, 68 N.W.2d 211, 214 (N.D.1955) (stating that royalties in oil and gas, until brought to the surface and reduced to possession are interests in real property). However, once Jeffers had extracted the gravel, Finstrom's royalty interest had accrued. *See* Black's Law Dictionary, 20–21 (6th ed. 1990) (defining "accrue" as meaning created, vested or matured). The severance of the gravel marks a change in the nature of any interest therein. "[A]n interest or right in accrued oil and gas royalties is personal property...." *Corbett*, 68 N.W.2d at 214, *see also Federal Land Bank of St. Paul v. State*, 274 N.W.2d 580, 583 (N.D.1979) (deciding for tax purposes that " 'produced' or 'severed' minerals are personal property, not real estate"); NDCC § 41–09–05(1)(h) (Supp. 1993) (defining "goods" for UCC purposes to include "all things which are movable at the time the security interest attaches," and not including "minerals or the like (including oil and gas) *before* extraction") (emphasis added); 58 C.J.S. Mines and Minerals § 213 (1948) (stating that "it has usually been held that oil and gas rents and royalties are profits issuing out of the land; and, while they become personal property after they have accrued, until they accrue they are part of the estate remaining in the lessor"). Upon severance of the gravel, the royalty interest accrues and becomes a personal property interest.

■ The accrued royalty interest is an enforceable or matured right to payment at some time. The date of payment in the instant case is contractually controlled, and is calculated from the date of the sale of any portion of the severed gravel. The complaint alleges that failure to pay at the specified time constitutes a breach of the contract and forms the basis for this cause of action.

The complaint also alleges that conversion occurs when there is an improper refusal to pay. This again is directly related to the sale of the severed gravel. In order to calcu-

---

1. We recognize that North Dakota has struggled in the past defining what is included when the word "mineral" is used in a reservation or a conveyance. *See, e.g., Mueller v. Stangeland*, 340 N.W.2d 450, 453–54 (N.D.1983); *Lee v. Frank*, 313 N.W.2d 733, 734–36 (N.D.1981); *Hovden v. Lind*, 301 N.W.2d 374, 376 (N.D.1981). This has become settled law upon the enactment of NDCC §§ 47–10–24 and 47–10–25 (Supp.1993) which define the word "mineral" when used in those instruments. Here the term "gravel" was specifically used, rather than "mineral," and the use was in a lease, and not in a reservation or conveyance. The question that we answer now is, when "gravel" is specifically addressed in a lease, what law is applicable.

The rules with regard to common law mineral leases, for the most part, are not dependent upon the type of mineral to be extracted. In other words, the legal theories involved with leaseholds and royalties are basically the same whether they are for extraction of gold, iron, or some other mineral. A good example is found in *Superior Oil Co. v. Devon Corp.*, 604 F.2d 1063, 1068–69 (8th Cir.1979), in which the Court of Appeals applied, to an oil and gas lease, the doctrine of an implied covenant to reasonably develop, even though that doctrine had originated in Nebraska in a *gravel* lease case. *George v. Jones*, 168 Neb. 149, 95 N.W.2d 609 (1959).

late the accrual of these actions, the earliest date from which to calculate would be the date of the alleged breach, which appears to have been approximately one month after the first gravel sale.

The complaint alleges the first gravel sale did not occur "until the summer of 1989." The instant action was commenced October 1, 1992. The shortest statute of limitations considered by the trial court was four years. *See* NDCC 41–02–104 (Supp.1993). Even applying this statute of limitations, Finstrom's claims would survive.

## II. Statute of Limitations for Finstrom's Breach of Duty of Diligence Claim

With respect to Finstrom's third claim alleging that the Bank breached its duty to diligently market the gravel, "[t]he party moving for a summary judgment has the burden of establishing that there is no genuine issue as to the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law." *Titus v. Titus,* 154 N.W.2d 391, 395 (N.D.1967). From the record before us we are unable to determine how the trial court concluded that Finstrom's claim should be dismissed because the statute of limitations had expired. "In the posture in which the case has been presented to us with regard to the amended complaint, we are ... 'unconvinced that summary judgment was properly entered' dismissing the claim[ ] raised in the amended complaint." *Herzog v. Yuill,* 399 N.W.2d 287, 292 (N.D.1987) (quoting *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569, 572 (1972)). Because we cannot determine whether judgment could be issued as a matter of law, the moving party has failed to meet its burden and therefore is not entitled to summary judgment.

Reversed and remanded.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.