2004 ND 117

RITTER, LABER AND ASSOCIATES, INC.; Elizabeth Cantarine, Personal Representative of the Estate of Eugene A. Burdick; and Russell L. Kiker, Plaintiffs and Appellants

v.

KOCH OIL, INC., a Division of Koch Industries, Inc., Defendant and Appellee.

No. 20030347.

Supreme Court of North Dakota.

June 3, 2004.

635

Ronald H. McLean (argued) and Jane L. Dynes (on brief), Serkland Law Firm, Fargo, ND; Marvin L. Kaiser (on brief), Kaiser Law Firm, Williston, ND; Gary J. Gordon (argued), Rider Bennett, LLP, Minneapolis, MN, for plaintiffs and appellants.

Charles F. Webber (argued), Jerry W. Snider (on brief), Aaron Van Oort (on brief) and Deborah A. Ellingboe (on brief), Faegre & Benson, Minneapolis, MN; John W. Morrison (appeared), Fleck, Mather & Strutz, Ltd., Bismarck, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] The representative plaintiffs in a class action, Ritter, Laber and Associates, Inc., Elizabeth Cantarine as personal representative of the estate of Eugene A. Burdick, and Russell L. Kiker, appeal from a summary judgment dismissing their claims against Koch Oil, Inc., a division of Koch Industries, Inc., ("Koch") for conversion, unjust enrichment, and an accounting, and denying their motion to amend the complaint to allege a claim for breach of contract. We hold there are disputed issues of material fact regarding the plaintiffs' claim for conversion, the trial court properly granted summary judgment on

the plaintiffs' claim for unjust enrichment, and the court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

I

[¶ 2] This case has been before this Court previously on issues involving the trial court's decision to certify the plaintiffs' claims as a class action. *Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.,* 2001 ND 56, 623 N.W.2d 424; *Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.,* 2000 ND 15, 605 N.W.2d 153. The plaintiffs represent a class "described as all persons and entities owning royalty interests and leasehold interests in wells from which Koch purchased or sold oil in the State of North Dakota between January 1, 1975 through December 1988 where the oil was measured by hand gauging."

[¶ 3] Koch's oil purchases were governed by written contracts called "division orders" that set out the terms of the sale and specified the methodology for Koch to pay for the oil it purchased. Koch used two general types of division orders, a "basic" division order and a "100%" division order. Under the "basic" division order, Koch contracted directly with those who had an interest in the oil and paid them directly according to their percentage interest. Under the "100%" division order, Koch contracted with a well operator for 100% of the oil that it bought from a particular well, and the well operator held separate contracts with interest holders and paid them according to their percentage interests in the oil. The division orders authorized Koch to receive oil to the extent of its requirements and provided that the "oil run in pursuance of this division order shall become [Koch's] property upon the delivery thereof to [Koch] or

any agent designated by [Koch]." The division orders said the quantities of oil purchased would be determined by Koch's methods of measurement and computation, including the "gauging of storage tanks using regularly compiled tank tables, the use of certified truck gauges, and the use of meters or any other reasonably accurate method of measurement and computation." The division orders required Koch to correct the volume to a temperature of 60 Fahrenheit and to deduct from the corrected volume the full percentage of basic sediment, water, and other impurities.

[¶ 4] Koch paid the plaintiffs for oil based on hand-gauging measurements at the well, but when Koch delivered the oil for shipping or selling, Koch measured the oil by volumetric meter, which allegedly resulted in Koch selling more oil than it had obtained from the plaintiffs. The plaintiffs claim Koch had an established practice of systematically adjusting the observed hand-gauging measurements for oil taken at the well, which allowed Koch to obtain more than 750,000 barrels of oil during the relevant time period without paying the plaintiffs for that oil.

[¶ 5] The plaintiffs sued Koch for conversion, unjust enrichment, and an accounting, alleging the differences in Koch's measurements resulted in Koch's not paying for all the oil it had received from the plaintiffs. The plaintiffs sought lost revenues attributable to the differences in measurements. The trial court granted Koch summary judgment on the plaintiffs' claims for conversion and for unjust enrichment. The court thereafter dismissed the plaintiffs' request for an accounting and denied their motion to amend their complaint to allege a claim for breach of contract.

[¶ 6] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The plaintiffs' ap-

peal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7]   We review this appeal under our standards for summary judgment, which is a procedure for promptly resolving an action on the merits without a trial if there are no disputed issues of material fact or inferences to be drawn from undisputed facts and if a party is entitled to judgment as a matter of law. *Bender v. Aviko*, 2002 ND 13, ¶ 4, 638 N.W.2d 545. Whether a trial court properly grants summary judgment is a question of law, which we review de novo on the entire record. *Fetch v. Quam*, 2001 ND 48, ¶ 8, 623 N.W.2d 357.   A party seeking summary judgment bears the initial burden of showing there are no genuine disputes regarding the existence of material facts. *Id.* at ¶ 9. On appeal, we view the evidence in the light most favorable to the party opposing the motion. *Id.* at ¶ 8.

## III

[¶ 8]   The plaintiffs argue the trial court erred in granting summary judgment dismissal of their claim for conversion.   The court ruled "Koch did not wrongfully obtain additional goods," because "Koch had the right to obtain all the oil that it obtained, but ... was obligated to properly measure and pay for all the oil it obtained," and the court viewed "Koch's alleged actions in not properly measuring and paying for the oil which Koch had lawfully obtained possession of as breach of contract but not conversion."

[¶ 9]   The plaintiffs argue claims for breach of contract and for conversion may arise from the same facts.   They argue they have an enforceable property interest in the excess oil, and there are disputed

factual issues about whether Koch systematically adjusted measurements of the oil without reporting the excess oil to the plaintiffs and then sold the unreported oil to third parties without paying the plaintiffs.   The plaintiffs argue the contracts did not entitle Koch to wrongfully possess more oil than it reported and did not entitle Koch to wrongfully transfer the oil to third parties without remitting payment to the plaintiffs.

[¶ 10]   Koch argues it never wrongfully possessed the oil, because the plaintiffs contracted with Koch to remove the oil from the plaintiffs' wells "to the extent of [Koch's] requirements" and any failure to pay for the oil may have been a breach of contract but was not conversion.   Koch argues the law of conversion involves possession of property, and issues about payment for property are matters of contract law.   Relying on *Piney Woods Country Life Sch. v. Shell Oil Co.*, 726 F.2d 225, 242 (5th Cir.1984), Koch asserts the plaintiffs' claims are for breach of contract and not conversion.

[¶ 11]   Conversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner. *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 18, 576 N.W.2d 505; *Sargent County Bank v. Wentworth*, 547 N.W.2d 753, 762 (N.D.1996); *Napoleon Livestock Auction, Inc. v. Rohrich*, 406 N.W.2d 346, 351 (N.D.1987); *Taugher v. Northern Pac. Ry. Co.*, 21 N.D. 111, 120, 129 N.W. 747, 750 (1910). *See* 18 Am. Jur. 2d *Conversion* § 1 (1985);   1 Dan B. Dobbs, *The Law of Torts*, § 61 (2001); Restatement (Second) of Torts § 222A (1965). Conversion requires an intent to exercise control or interfere with the use of property to such a degree as to require a forced sale of the plaintiff's interest in

the goods to the defendant. *Dairy Dep't v. Harvey Cheese, Inc.*, 278 N.W.2d 137, 144 (N.D.1979). *See* Restatement (Second) of Torts, § 222A. The gist of conversion is not in acquiring the complainant's property, but in wrongfully depriving the complainant of the property. *John Deere Co. v. Nygard Equip. Inc.*, 225 N.W.2d 80, 89 (N.D.1974); *Christensen v. Farmers State Bank*, 157 N.W.2d 352, 357 (N.D. 1968); *Hook v. Crary*, 142 N.W.2d 140, 149 (N.D.1966); *Leach v. Kelsch*, 106 N.W.2d 358, 363 (N.D.1960). In *Harvey Cheese*, 278 N.W.2d at 144 (citing Prosser, *Torts* § 15 (4th ed. 1971)), this Court said if the defendant rightly came into possession and there was no wrongful taking of goods, demand and refusal to return may be required for conversion. However, this Court also has said demand and refusal are evidence of conversion but are not necessary to constitute conversion where a demand would be unavailing. *Hochstetler v. Graber*, 78 N.D. 90, 95, 48 N.W.2d 15, 18–19 (1951); *Rolette State Bank v. Minnekota Elevator Co.*, 50 N.D. 141, 150, 195 N.W. 6, 8 (1923); *More v. Burger*, 15 N.D. 345, 350, 107 N.W. 200, 201 (1906).

[¶ 12] Our decisions have recognized that claims for conversion may arise under the same facts as claims for breach of contract. *See Finstrom v. First State Bank*, 525 N.W.2d 675, 677 (N.D.1994); *Leach*, 106 N.W.2d at 360–65; *Hochstetler*, 78 N.D. at 94–95, 48 N.W.2d at 18–19; *Golly v. Northland Elevator Co.*, 53 N.D. 564, 568–70, 207 N.W. 438, 439–40 (1926); *Taugher*, 21 N.D. at 120, 129 N.W. at 750.

[¶ 13] In *Finstrom*, 525 N.W.2d at 677–78, we considered issues about the statute of limitations for claims for breach of contract and for conversion. There, the plaintiff alleged the defendant breached its contract to pay royalties for gravel, which became personal property after being extracted from the ground. *Id.* at 676–77.

The plaintiff also alleged the defendant converted the plaintiff's interest in the severed gravel when the defendant continued to sell the gravel and refused to pay royalties. *Id.* at 676. In calculating when those claims accrued under the statute of limitations, we said the earliest date from which to calculate was the date of the alleged breach, which was one month after the first gravel sale. *Id.* at 677–78. Although no specific issue was raised about the coexistence of claims for conversion and breach of contract under those facts, we concluded the plaintiff's claims for conversion and for breach of contract survived even under the shortest statute of limitations considered by the trial court, and we reversed summary judgments dismissing those claims. *Id.* at 677–78. *Finstrom* supports the principle that the sale of gravel and the refusal to pay the royalty proceeds to a plaintiff may be conversion and a breach of contract. *Id.* at 677–78.

[¶ 14] In *Leach*, 106 N.W.2d at 360, this Court considered an action for conversion of 3600 shares of stock in conjunction with contract issues. There, the plaintiff and the defendant agreed the defendant would transfer 3600 shares of stock in North American Royalties to the plaintiff as part of a transfer of assets in their respective companies to North American Royalties in exchange for stock in that company. *Id.* at 361–63. The defendant subsequently refused to convey the 3600 shares of stock in North American Royalties to the plaintiff. *Id.* at 363. This Court concluded the plaintiff was entitled to judgment for the value of the stock converted:

> There can be no question under the agreement arrived at between the parties but that plaintiff acquired 3,600 shares of stock of North American Royalties which were delivered to defendant's corporation and in turn taken,

possessed and sold by him, which in turn deprived the plaintiff of the right of ownership and possession of this stock and deprived him of any enjoyment or benefit therefrom. *Id.* at 364.

[¶ 15] In *Hochstetler*, 78 N.D. at 102, 48 N.W.2d at 22, this Court affirmed a judgment entered upon a jury verdict finding three defendants had converted grain. There, the plaintiff and the three defendants had an oral agreement entitling the plaintiff to one-sixth of the grain harvested from certain land during the 1947 farming season. *Id.* at 92, 48 N.W.2d at 17. The plaintiff alleged the defendants converted the grain for their own use and, after demand, refused to deliver one-sixth of the grain to the plaintiff. *Id.* This Court recognized the general rule that the wrongful sale of personal property in which another has an interest renders the seller liable for the conversion of that interest. *Id.* at 94, 48 N.W.2d at 18. This Court affirmed a judgment for conversion, concluding the record contained ample evidence of conversion regardless of conflicting testimony about a demand for a division of the grain, and the evidence did not support an accord and satisfaction. *Id.* at 93–102, 48 N.W.2d at 18–22.

[¶ 16] In *Golly*, 53 N.D. at 568–70, 207 N.W. at 439–40, this Court recognized an action to foreclose a thresher's lien and an action for conversion may be available to the holders of the thresher's lien. This Court said a plaintiff may elect to sue the wrongdoer in conversion to reclaim the property or its proceeds. *Id. Golly* recognizes that the defendants' sale of the grain and refusal to pay the plaintiff the proceeds may be conversion. *See id.*

[¶ 17] In *Taugher*, 21 N.D. at 120, 129 N.W. at 750, this Court said a shipper may sue a carrier who loses property for breach of contract and also for conversion if the shipper establishes a tortious detention or destruction of personal property, or an exclusion or defiance of the owner's right, or the withholding of possession under a claim of title inconsistent with the owner.

[¶ 18] The common thread in those cases is that claims for conversion and for breach of contract may arise from the same facts. Other courts also have recognized that claims for conversion may arise from the same facts as claims for breach of contract. *See Ansin v. River Oaks Furniture, Inc.*, 105 F.3d 745, 755 (1st Cir.1997) (plaintiff's claim that company shares were transferred in derogation of contractual terms without their knowledge or consent can be fairly characterized as either an action for conversion or an action for breach of contract); *National Union Fire Ins. Co. v. Care Flight Air Ambulance Serv., Inc.*, 18 F.3d 323, 326 (5th Cir.1994) (Texas law recognizes separate causes of action for breach of contract and conversion may arise from same facts); *Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023, 1027–28 (Okla.Ct.App.1983) (tort may arise in the course of performance of contract and evidence at trial supported jury instructions on conversion, negligence, and breach of contract). *See also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts*, § 92 (5th ed. 1984).

[¶ 19] In *National Union Fire Ins.*, 18 F.3d at 326 (quoting *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991)), the United States Court of Appeals for the Fifth Circuit said the determination whether conduct that breaches a contract may also be conversion requires a court to look at the origin of the duty owed and the nature of the resulting injury, and the court described the relevant inquiry into the origin of the duty:

"Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton On the Law of Torts* § 92 at 655 (5th Ed. 1984).... If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

■ [¶ 20] We reject Koch's argument that the plaintiffs' conversion claims are simply about a mere failure to pay for the oil and are restricted to a breach of contract claim. There is conflicting evidence about whether Koch systematically adjusted the measurements of oil taken at the wells, which resulted in Koch's obtaining more than 750,000 barrels of oil from the plaintiffs without reporting that oil to them and without paying them. Although Koch may have been entitled to initially take the oil, the gist of conversion is not the acquisition of the property but the wrongful deprivation of that property. *John Deere Co.*, 225 N.W.2d at 89; *Christensen*, 157 N.W.2d at 357; *Hook*, 142 N.W.2d at 149; *Leach*, 106 N.W.2d at 363. Koch has sold the unreported oil, and any demand for that oil would be unavailing. However, our decisions suggest the plaintiffs may be entitled to the proceeds from the unreported oil. *See Finstrom*, 525 N.W.2d at 677–78; *Hochstetler*, 78 N.D. at 94, 48 N.W.2d at 18; *Golly*, 53 N.D. at 568–70, 207 N.W. at 439–40. *See also Pan American Petroleum Corp. v. Long*, 340 F.2d 211, 219–25

(5th Cir.1964) (recognizing proceeds from sale of stolen oil may be subject to conversion). The plaintiffs' complaint effectively alleged Koch wrongfully deprived the plaintiffs of excess oil and proceeds that were not reported to the plaintiffs. We conclude Koch's alleged conduct in wrongfully depriving the plaintiffs of the excess unreported oil and the proceeds from its sale involves more than a failure to pay under the terms of a contract and may give rise to liability independent of any contractual liability.

[¶ 21] Koch's reliance on *Piney Woods* is misplaced. The primary issue in *Piney Woods* was contract interpretation, i.e., the meaning of "market value" and "sold at the wells" in a royalty clause and the propriety of deducting processing costs from the lessors' royalties. *Piney Woods*, 726 F.2d at 230–41. In denying the plaintiffs' request for prejudgment interest, the court said there was no basis for conversion in that action because the defendant neither intended to exercise nor exercised control over the plaintiffs' property in a manner inconsistent with the true owner's right; rather, the defendant simply failed to pay royalties according to the proper measure. *Id.* at 241–42. Here, there are disputed issues of fact about whether Koch exercised control over the unreported oil and the proceeds from that oil.

[¶ 22] Under this Court's summary judgment standard of review, we conclude there are disputed issues of fact about whether Koch took possession of more oil than it reported to the plaintiffs and whether the plaintiffs are entitled to the proceeds from that extra oil. We conclude there are disputed issues of material fact that may entitle the plaintiffs to recovery under their conversion claim, and we therefore reverse the summary judgment dismissing the plaintiffs' conversion claim against Koch.

## IV

[¶ 23] The plaintiffs argue the trial court erred in granting Koch summary judgment dismissal of their claim for unjust enrichment. The trial court said unjust enrichment applied only in the absence of a contract between the parties, and concluded the contract between the parties precluded the plaintiffs' claim for unjust enrichment against Koch.

[¶ 24] The plaintiffs concede an express contract generally precludes an unjust enrichment claim, but they assert that three exceptions to the general rule apply to this case. First, they argue the contract does not relate to the same subject matter, because the contract applies to "all liquid hydrocarbons purchased hereunder" and does not apply to the excess unreported oil that was not purchased. Second, they claim the class members not in privity with Koch lack a remedy for breach of contract. Third, they argue unjust enrichment is warranted because it is a better way to render complete justice.

[¶ 25] Koch argues the plaintiffs who have contracted directly with it have no unjust enrichment claim as a matter of law, because unjust enrichment applies only in the absence of a contract between the parties and there can be no implied-in-law contract when there is an express contract between the parties relative to the same subject matter. *See BTA Oil Producers, Inc. v. MDU Resources Group, Inc.*, 2002 ND 55, ¶ 37, 642 N.W.2d 873. Koch also argues the plaintiffs who have not contracted directly with it cannot sue for unjust enrichment under *Apache Corp. v. MDU Resources Group, Inc.*, 1999 ND 247, 603 N.W.2d 891.

[¶ 26] Unjust enrichment is an equitable doctrine based upon a quasi or constructive contract implied by law to prevent a person from being unjustly enriched at the expense of another. *Cavali-*

*er County Mem'l Hosp. Ass'n v. Kartes*, 343 N.W.2d 781, 784 (N.D.1984). The doctrine serves as a basis for requiring restitution of benefits conferred "in the absence of an expressed or implied in fact contract." *Midland Diesel Serv. and Engine Co. v. Sivertson*, 307 N.W.2d 555, 557 (N.D.1981). A determination of unjust enrichment is a conclusion of law and is fully reviewable by this Court. *Opp v. Matzke*, 1997 ND 32, ¶ 8, 559 N.W.2d 837. Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and impoverishment; and (5) an absence of remedy provided by law. *A & A Metal Bldgs. v. I–S, Inc.*, 274 N.W.2d 183, 189 (N.D.1978). The doctrine of unjust enrichment may be invoked " 'when a person has and retains money or benefits which in justice and equity belong to another.' " *Sivertson*, 307 N.W.2d at 557 (quoting *Schlichenmayer v. Luithle*, 221 N.W.2d 77, 83 (N.D.1974)). A determination of unjust enrichment "holds that a certain state of facts is contrary to equity." *Matter of Estate of Zent*, 459 N.W.2d 795, 798 (N.D.1990). An essential element of recovery under unjust enrichment is the receipt of a benefit by the defendant from the plaintiff that would be inequitable to retain without paying for its value. *Zuger v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 135, 138 (N.D.1992). Even when a person has received a benefit from another, that person is liable only if the circumstances of the receipt or retention are such that, as between the two persons, it is unjust to retain the benefit. *Apache*, 1999 ND 247, ¶ 14, 603 N.W.2d 891 (quoting comment c., *Restatement of Restitution* § 1 (1937)).

[¶ 27] In *Apache*, 1999 ND 247, ¶ 2, 603 N.W.2d 891, we considered a claim by Apache, a natural gas producer, for unjust

enrichment against MDU, a natural gas distributor. There, Apache sold natural gas to Koch, a processor, who in turn sold the natural gas to MDU. *Id.* MDU ultimately breached its contract to buy natural gas from Koch, which resulted in Koch's buying less natural gas from Apache. *Id.* at ¶ 6. We concluded the money MDU saved by breaching its contract with Koch was not a "benefit at the direct expense of" Apache. *Id.* at ¶ 15 (citing *Sivertson*, 307 N.W.2d at 557). We said Apache's reduced income resulted from its use of a percentage of proceeds as a pricing factor in its agreement with Koch, and when the impoverishment resulted from a valid contractual agreement made by a party, the result was not contrary to equity. *Apache*, at ¶ 15 (citing *Albrecht v. Walter*, 1997 ND 238, ¶ 23, 572 N.W.2d 809). We concluded an essential element of unjust enrichment—" 'receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value' "—was not present. *Apache*, at ¶ 15 (quoting *Zuger*, 494 N.W.2d at 138). We therefore concluded the trial court did not err in deciding Apache had failed to prove an unjust enrichment claim against MDU.

[¶ 28] In *BTA*, 2002 ND 55, ¶¶ 19–24, 642 N.W.2d 873, we declined to overrule *Apache* in a case involving similar facts with different producers and MDU. We also concluded the trial court did not err in dismissing the producers' unjust enrichment claim against Koch. *BTA*, at ¶¶ 36–42. We said it is well-settled that unjust enrichment applies only in the absence of a contract between the parties, and there can be no implied-in-law contract when there is an express contract between the parties relative to the same subject matter. *Id.* at ¶ 37. We quoted with approval from *JN Exploration and Prod. v. Western Gas Res., Inc.*, 153 F.3d 906, 910 (8th Cir.1998), and concluded that when the parties had

voluntarily entered into an express written contract which defined their rights, unjust enrichment was not available. *BTA*, at ¶ 38.

[¶ 29] Although Koch's alleged systematic adjustments of oil measurements may support a claim for conversion based on wrongfully depriving the plaintiffs of the unreported oil and proceeds, we conclude the plaintiffs' respective contractual relationships define their rights regarding the unreported oil and proceeds and preclude their claim for unjust enrichment. The plaintiffs with a direct contractual relationship with Koch are not entitled to recover under unjust enrichment, because there is an express contract between the parties relative to the same subject matter. *BTA*, 2002 ND 55, ¶¶ 37–38, 642 N.W.2d 873. We conclude that contract defines the parties' rights and precludes a claim for unjust enrichment. The plaintiffs who did not contract directly with Koch but who contracted with a producer who in turn contracted with Koch are not entitled to recover under the rationale of *Apache*, 1999 ND 247, ¶ 15, 603 N.W.2d 891 (when an impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity and an essential element of recovery under a theory of unjust enrichment—receipt of a benefit by the defendant from the plaintiff that would be inequitable to retain without paying for its value—is not present). We reject the plaintiffs' argument that unjust enrichment is warranted here because it is a better way to render complete justice, and we hold the trial court did not err in dismissing the plaintiffs' unjust enrichment claim.

## V

[¶ 30] The plaintiffs argue the trial court erred in dismissing their re-

quest for an accounting. The trial court concluded, because the plaintiffs' underlying claims for conversion and unjust enrichment had been dismissed, they had no right to an accounting.

[¶ 31] Equitable jurisdiction for an accounting may be invoked when (1) there is a fiduciary relationship between the parties, accompanied by a duty on the part of the defendant to render an account, (2) there are mutual accounts, or, if the account is all on one side, the account is complicated, and (3) there is a need for discovery. *Stuber v. Taylor*, 200 N.W.2d 276, 280 (N.D.1972). *See* 1 Am. Jur. 2d *Accounts and Accounting*, § 54 (1994). A court may also assume jurisdiction for an accounting if there is some other basis for equitable jurisdiction. *Stuber*, at 280. *See* 1 Am. Jur. 2d, *Accounts and Accounting*, at § 54.

[¶ 32] Because we reverse the dismissal of plaintiffs' conversion claim against Koch, we conclude there is an equitable basis for an accounting. We therefore reverse the trial court's dismissal of the plaintiffs' request for an accounting.

## VI

[¶ 33] The plaintiffs argue the trial court abused its discretion in denying their motion to amend the complaint to include a claim for breach of contract, because the court did not find Koch would be prejudiced by an amendment, Koch included contract defenses in its answer, and the plaintiffs had previously declined to assert a contract claim because of strategic concerns. Koch responds the trial court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint, because the proposed amendment was omitted from the original complaint for strategic or tactical reasons, the plaintiffs' motion was untimely, and the amendment would have prejudiced both the trial court

and Koch by requiring reconsideration of the class certification issues.

[¶ 34] Rule 15(a), N.D.R.Civ. P., permits amendments to pleadings and authorizes a trial court to freely grant amendments when justice requires. We will not reverse a trial court's decision to grant or deny an amendment to pleadings, absent an abuse of discretion. *Messiha v. State*, 1998 ND 149, ¶ 7, 583 N.W.2d 385. A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 29, 590 N.W.2d 454.

[¶ 35] Under the circumstances of this case, including the plaintiffs' failure to initially bring a breach of contract claim for tactical reasons and the ramifications on the class certification, we conclude the trial court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint to include a claim for breach of contract.

## VII

[¶ 36] We affirm the dismissal of the plaintiffs' claim for unjust enrichment and the denial of the plaintiffs' motion to amend their complaint, and we reverse the dismissal of the plaintiffs' claims for conversion and an accounting, and remand for proceedings consistent with this opinion.

[¶ 37] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.