Jensen, Justice.
 

 *139
 
 [¶ 1] Greggory Tank appeals from an amended judgment quieting title to royalty interests in property located in McKenzie County in favor of several of the defendants ("the defendants"). We reverse the district court's amended judgment quieting title to the royalty interests in favor of the defendants and direct the entry of judgment quieting title in favor of Tank. We remand this case to the district court for determination of whether Tank is barred from the recovery of royalty payments previously made to the defendants and, if not barred, the amount of the recovery.
 

 I
 

 [¶ 2] In June 2014, Tank sued numerous defendants seeking to quiet title to royalty interests in proceeds from the production from an oil and gas well. Most of the defendants did not appear or settled with Tank. The remaining defendants who are the appellees in this appeal contested the quiet title action initiated by Tank.
 

 [¶ 3] The royalty interests at issue were subject to several possible conveyances. Tank claims ownership of a 16 percent royalty interest based on an unbroken chain of title utilizing filed county records dating back to the federal fee patent. Included within that chain of title is a 1931 purchase of the property by McKenzie County under a tax foreclosure sale. The County subsequently sold and transferred the property in 1945.
 

 [¶ 4] The defendants claim various percentages of royalty interests under a recorded 1938 assignment of an 11 percent royalty to oil and gas produced on the property. The 1938 assignment was granted by Hagen J. Carlson and Esther Carlson. The defendants responded to the complaint asserting that Tank's claim was barred by the Marketable Record Title Act ("MRTA") under N.D.C.C. ch. 47-19.1, the statute of limitations provided in N.D.C.C. § 28-01-05, adverse possession and laches. The defendants' 11 percent interest is within the interest claimed by Tank. The defendants requested a judgment in their favor quieting title to their 11 percent collective interest.
 

 [¶ 5] The parties brought cross-motions for summary judgment. In response to Tank's motion for summary judgment, the defendants did not produce any evidence that their, or any, mineral interests had been severed from the property prior to McKenzie County's 1931 acquisition of the property through the tax lien foreclosure. The defendants did not produce any evidence of a transfer from McKenzie County to any other party after the 1931 tax lien foreclosure and before McKenzie County's sale and transfer of the property in 1945 to Tank's predecessors in interest. The defendants did contend that Tank's claim to the royalty interest failed as a matter of law, and in the alternative, that there are material questions of fact regarding the validity of McKenzie County's acquisition of the property through the tax lien foreclosure proceedings, asserting that Tank failed to prove that McKenzie County had properly served the owner of the property as required in the tax lien foreclosure proceedings.
 

 [¶ 6] The district court granted summary judgment quieting title in favor of
 
 *140
 
 the defendants. The order documenting the district court's determination was prepared by counsel for the defendants and summarily concluded that "all of the defenses [asserted by the defendants] are well-founded and apply." No further analysis of the defenses is provided in the order. The order stated, without analysis, that the defendants had proven the "origins" of their chain of title and Tank had failed to establish that the defendants' title was invalid.
 

 II
 

 [¶ 7] "Summary judgment is a procedural device used to promptly resolve a controversy on the merits without a trial if either party is entitled to judgment as a matter of law and the material facts are undisputed or if resolving the disputed facts would not alter the result."
 
 Riedlinger v. Steam Bros., Inc.
 
 ,
 
 2013 ND 14
 
 , ¶ 10,
 
 826 N.W.2d 340
 
 (quoting
 
 Burris Carpet Plus, Inc. v. Burris
 
 ,
 
 2010 ND 118
 
 , ¶ 10,
 
 785 N.W.2d 164
 
 ). The moving party bears the initial burden of showing there are no genuine issues of material fact in dispute and the case is appropriate for judgment as a matter of law.
 
 Riedlinger
 
 , at ¶ 10. If the motion is properly made and supported, the opposing party must set forth specific facts by presenting competent, admissible evidence, by affidavit or by directing the court to other evidence in the record, showing there is a genuine issue of material fact.
 
 Hale v. Ward Cty.
 
 ,
 
 2012 ND 144
 
 , ¶ 12,
 
 818 N.W.2d 697
 
 . "Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial."
 
 Riverside Park Condos. Unit Owners Ass'n v. Lucas
 
 ,
 
 2005 ND 26
 
 , ¶ 8,
 
 691 N.W.2d 862
 
 (quoting
 
 Zuger v. State
 
 ,
 
 2004 ND 16
 
 , ¶ 7,
 
 673 N.W.2d 615
 
 ).
 

 [¶ 8] In deciding whether to grant summary judgment, the district court may consider the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence.
 
 Riedlinger
 
 ,
 
 2013 ND 14
 
 , ¶ 10,
 
 826 N.W.2d 340
 
 . "Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts."
 
 Id
 
 . (quoting
 
 Burris Carpet Plus
 
 ,
 
 2010 ND 118
 
 , ¶ 10,
 
 785 N.W.2d 164
 
 ). "[T]he district court's 'role is limited to determining whether the evidence and inferences to be drawn therefrom, when viewed in the light most favorable to the party opposing summary judgment, demonstrate that there are no genuine issues of material fact.' "
 
 Farmers Union Oil Co. of Garrison v. Smetana
 
 ,
 
 2009 ND 74
 
 , ¶ 10,
 
 764 N.W.2d 665
 
 (quoting
 
 Heng v. Rotech Med. Corp.
 
 ,
 
 2004 ND 204
 
 , ¶ 34,
 
 688 N.W.2d 389
 
 ). Deciding an issue on summary judgment is not appropriate if the court must draw inferences and make findings on disputed facts.
 
 Smetana
 
 , at ¶ 10. The court may not "weigh the evidence, determine credibility, or attempt to discern the truth of the matter...."
 
 Id
 
 .
 

 III
 

 [¶ 9] Tank asserts he is entitled to summary judgment as a matter of law because he can trace an unbroken chain of title from the federal fee patent to his acquisition of the property. The defendants argue that their 11 percent royalty interest was severed from the property through the 1938 conveyance and that their interests can be traced through an unbroken chain of title back to the 1938 conveyance. Tank counters that the royalty interest could not be severed from the property through the 1938 conveyance because the tax lien foreclosure in 1931 terminated any
 
 *141
 
 interest other than McKenzie County's interest in the property.
 

 [¶ 10] The defendants' assertion that they acquired an interest in the property through the 1938 conveyance fails for two reasons. First, the defendants did not produce any records establishing that the grantors of the 1938 conveyance, the Carlsons, ever had an interest in the property at issue. While the parties agree that the Carlsons owned an interest in adjacent property, no evidence was provided establishing how the Carlsons acquired any interest in the 11 percent royalties they allegedly conveyed through the 1938 conveyance. Absent evidence that the grantors from which the defendants' claimed ownership interest arises had an interest in the property, it is impossible to conclude as a matter of law that the 11 percent royalty interest had been severed from the property through the 1938 conveyance.
 

 [¶ 11] Second, this Court's decision in
 
 Payne v. A.M. Fruh Co.
 
 ,
 
 98 N.W.2d 27
 
 (N.D. 1959) is dispositive. In
 
 Payne
 
 , the facts of the case were summarized as follows:
 

 In this case the land in question was sold to the county for the taxes for the year 1932. Subsequent tax sale certificates were issued for the years 1933, 1934 and 1935. No redemption was made for these tax sales and a tax deed was issued to Williams County in 1941. As has been stated the royalty interests of the defendants were first severed from the former owner's title to the land in the years 1936 and 1937 or after the tax lien had attached to the land. The county's tax deed therefore gave it title or color of title to the whole estate in the land including the royalty interests.
 
 Nystul v. Waller
 
 , N.D.,
 
 84 N.W.2d 584
 
 . When Kamp purchased the land from the county in 1943, he received whatever title or color of title that the county had. Kamp entered into possession of the land in 1943 and paid the taxes thereon for more than ten years prior to the commencement of this action.
 

 Id
 
 . at 31.
 

 [¶ 12] In this case, no minerals were severed from the property before the 1931 tax lien foreclosure. The property was sold to McKenzie County in 1931 for the unpaid taxes for the year 1930. No redemption was made for the tax sale and a tax deed was issued to McKenzie County in 1941. The royalty interests of the defendants were allegedly severed from the land through the 1938 conveyance after the tax lien had attached to the land. The 1941 tax deed gave the County title or color of title to the whole estate in the land including the royalty interests.
 
 Payne
 
 ,
 
 98 N.W.2d at
 
 31 ;
 
 Nystul v. Waller
 
 ,
 
 84 N.W.2d 584
 
 , 586 (N.D. 1957). When Tank's predecessor in interest purchased the land from the County in 1945, Tank's predecessor received whatever title or color of title that the County had in the property. Our decision in
 
 Payne
 
 therefore prevents the Carlsons from severing whatever royalty interest they may have had through a conveyance that occurred after the attachment of the tax lien. The district court's conclusion that the defendants had proven the "origins" of their chain of title was erroneous as a matter of law.
 

 [¶ 13] The district court appears to have placed the burden on Tank to prove that the defendants' title to their alleged royalty interest was invalid. As explained in our decision in
 
 Payne
 
 :
 

 A tax deed is an independent grant from sovereign authority which gives a new complete and paramount title, which has nothing to do with the prior chain of title.
 
 Nelson v. Kloster
 
 ,
 
 68 N.D. 108
 
 ,
 
 277 N.W. 390
 
 [ (1938) ] ;
 
 Baird v. Stubbins
 
 ,
 
 58 N.D. 351
 
 ,
 
 226 N.W. 529
 
 ,
 
 65 A.L.R. 1009
 
 [ (1929) ] ;
 

 *142
 

 Peterson v. Reishus
 
 ,
 
 66 N.D. 436
 
 ,
 
 266 N.W. 417
 
 ,
 
 105 A.L.R. 724
 
 [ (1936) ]. Such a deed, by the provisions of Section 2206, C.L.1913 (the law in force when the deed in this case was executed), is "conclusive evidence of the truth of all of the facts therein recited and prima facie evidence of the regularity of all of the proceedings from the assessment and valuation of the land by the assessor up to the execution of the deed." In
 
 Twedt v. Hanson
 
 ,
 
 58 N.D. 571
 
 ,
 
 226 N.W. 615
 
 , 618 [ (1929) ], this court stated: "This deed being prima facie evidence of the regularity of the proceedings, we therefore presume that the notice of expiration of redemption was properly served as required by law, and the burden of proof is upon the appellant to show a contrary state of facts." It follows from what has been said above that a tax deed, valid upon its face, creates a presumptive title in the grantee to the entire estate in the land upon which the taxes for which the land was sold were a lien and that such presumption of title continues in effect until it has been overcome by the affirmative action in court, by suit or counterclaim on the part of a person who has a sufficient interest to challenge the title.
 

 Payne
 
 ,
 
 98 N.W.2d at 31
 
 .
 

 [¶ 14] The tax deed in this case created a presumptive title to the entire estate related to the royalties at issue in favor of Tank's predecessor in interest. That "presumption of title continues in effect until it has been overcome by the affirmative action in court, by suit or counterclaim on the part of a person who has a sufficient interest to challenge the title."
 
 Payne
 
 ,
 
 98 N.W.2d at 31
 
 . Other than the naked assertion that McKenzie County failed to confirm that there had been proper service of the underlying tax lien foreclosure proceedings, the defendants offered no evidence to overcome Tank's predecessor's title. To the contrary, the defendants failed to establish that the Carlsons, the grantors in the 1938 conveyance, ever had an interest in the property or ever had sufficient interest in the property to challenge the title. If the grantor from which the defendants allege that their interest arises did not have a sufficient interest in the property to challenge the title to the property, it stands to reason the defendants also do not have a sufficient interest in the property to challenge the title. Tank did not have the burden to invalidate the defendants' title and, given the undisputed facts of this case, we conclude Tank had title as a matter of law.
 

 IV
 

 [¶ 15] Although we have concluded that Tank has title to the property, it is necessary to address the district court's conclusion that "all the defenses [asserted by the defendants] are well-founded and apply." Those "defenses" include the assertions that Tank's claim was barred by the MRTA under N.D.C.C. ch. 47-19.1, the statute of limitations provided in N.D.C.C. § 28-01-05, adverse possession and laches.
 

 [¶ 16] The MRTA is codified in N.D.C.C. ch. 47-19.1. Section 47-19.1-07, N.D.C.C., provides in part: "The holder of an interest in severed minerals is deemed in possession of the minerals if that person has used the minerals as defined in section 38-18.1-03 and the use is stated in the affidavit of possession provided for in this section." The defendants concede that no affidavit of possession as required by N.D.C.C. § 47-19.1-07 was recorded. As a matter of law, the defendants' failure to comply with the requirements of the MRTA prevents the MRTA from applying to this case.
 
 See
 

 Black Stone Minerals Co., L.P. v. Brokaw
 
 ,
 
 2017 ND 110
 
 , ¶ 14,
 
 893 N.W.2d 498
 
 .
 

 *143
 
 [¶ 17] The defendants' claim of adverse possession and affirmative defense that the statute of limitations barred Tank's quiet title action both require that the defendants had possession of the royalties. A claim for adverse possession is statutorily defined by N.D.C.C. § 47-06-03 and requires "actual open adverse and undisputed possession" by the defendants for a period of ten years. The statute of limitations relied upon by the defendants is provided in N.D.C.C. § 28-01-05 and requires Tank to have initiated within twenty years after the defendants "seized or possessed" the property. The defendants' claim of adverse possession and affirmative defense based on the statute of limitations both fail as a matter of law because the defendants did not have "possession" of the property.
 

 [¶ 18] Tank asserts that the statute of limitations defense and adverse possession claim fail as a matter of law because a royalty interest cannot be possessed until the minerals have been extracted from the ground. The defendants assert that because royalty interests are an interest in real property, the royalty interests can be possessed. Both parties rely on our decision in
 
 Finstrom v. First State Bank of Buxton
 
 ,
 
 525 N.W.2d 675
 
 (N.D. 1994).
 

 [¶ 19] In
 
 Finstrom
 
 , we stated:
 

 Before determining whether the statute of limitations had expired on Finstrom's contract and conversion claims, we must determine what interest Finstrom appears to hold in order to determine when his rights accrued. From the facts as set forth in the record, it appears that Finstrom had a right to royalties under the lease with Jeffers for gravel mined on his land. We have held "that an unaccrued oil and gas royalty is an interest in real property."
 
 GeoStar Corp. v. Parkway Petroleum, Inc.
 
 ,
 
 495 N.W.2d 61
 
 , 67 (N.D. 1993). The gravel royalties in the instant case are analogous to petroleum royalties.
 
 Compare
 
 NDCC § 38-11-01(2) (1987)
 
 with
 
 NDCC § 38-11.1-03(5) (1987) (recognizing both oil and gas as well as all other "valuable inert lifeless substance[s] ... found within the earth" as minerals yet promulgating different regulations for their extraction);
 
 see also
 
 NDCC § 47-10-24 (Supp. 1993) (recognizing that when specifically included, gravel is treated like all other minerals). Before severance of the gravel, the unaccrued royalty was an interest in real property.
 
 GeoStar Corp.
 
 ,
 
 495 N.W.2d at
 
 67 ;
 
 see also
 

 Corbett v. La Bere
 
 ,
 
 68 N.W.2d 211
 
 , 214 (N.D.1955) (stating that royalties in oil and gas, until brought to the surface and reduced to possession are interests in real property). However, once Jeffers had extracted the gravel, Finstrom's royalty interest had accrued.
 
 See
 

 Black's Law Dictionary
 
 , 20-21 (6th ed. 1990) (defining "accrue" as meaning created, vested or matured). The severance of the gravel marks a change in the nature of any interest therein. "[A]n interest or right in accrued oil and gas royalties is personal property...."
 
 Corbett
 
 ,
 
 68 N.W.2d at 214
 
 ,
 
 see also
 

 Federal Land Bank of St. Paul v. State
 
 ,
 
 274 N.W.2d 580
 
 , 583 (N.D. 1979) (deciding for tax purposes that " 'produced' or 'severed' minerals are personal property, not real estate"); NDCC § 41-09-05(1)(h) (Supp. 1993) (defining "goods" for UCC purposes to include "all things which are movable at the time the security interest attaches," and not including "minerals or the like (including oil and gas)
 
 before
 
 extraction") (emphasis added); 58 C.J.S. Mines and Minerals § 213 (1948) (stating that "it has usually been held that oil and gas rents and royalties are profits issuing out of the land; and, while they become personal property after they have accrued, until they accrue they are part of the estate remaining in the lessor").
 

 *144
 
 Upon severance of the gravel, the royalty interest accrues and becomes a personal property interest.
 

 525 N.W.2d at 677
 
 (footnote omitted).
 

 [¶ 20] In
 
 Finstrom
 
 we recognized that prior to extraction of the minerals royalty interests are interests in real property. The defendants assert that because royalties are an interest in real property they can be "possessed." The defendants' assertion ignores much of this Court's analysis in
 
 Finstrom
 
 . Specifically, in
 
 Finstrom
 
 we recognized that "it has usually been held that oil and gas rents and royalties are profits issuing out of the land; and, while they become personal property after they have accrued, until they accrue they are part of the estate remaining in the lessor."
 
 525 N.W.2d at 677
 
 (quoting 58 C.J.S. Mines and Minerals § 213 (1948) ). That interpretation is consistent with the interpretation of the Wyoming Supreme Court which has held that while unaccrued royalties remain in the ground, there can be no possession, and because royalties can only be possessed once severed and become personal property, there can be no possession of royalties as a real property interest.
 
 See
 

 Connaghan v. Eighty-Eight Oil Co.
 
 ,
 
 750 P.2d 1321
 
 , 1324 (Wyo. 1988) (an overriding royalty interest is a nonpossessory right that cannot be adversely possessed). The Kansas Court of Appeals has similarly held that "[o]ne cannot obtain a royalty interest by adverse possession."
 
 Stratmann v. Stratmann
 
 ,
 
 6 Kan.App.2d 403
 
 ,
 
 628 P.2d 1080
 
 , 1085 (1981). This appears to be the commonly accepted rule.
 
 See, e.g.
 
 , 1 Williams & Meyers,
 
 Oil and Gas Law
 
 § 224.2 (2017); M. McMahon, Annot.,
 
 Oil and gas royalty as real or personal property
 
 ,
 
 56 A.L.R. 4th 539
 
 , § 5 (1987) ; 58 C.J.S.
 
 Mines and Minerals
 
 § 182 (2017).
 

 [¶ 21] We conclude that royalty interests cannot be "possessed" until the minerals have been extracted from the ground, at which point they become personal property. Therefore, royalty interests cannot be "possessed" for purposes of the statute of limitations in N.D.C.C. § 28-01-05 or for purposes of adverse possession under N.D.C.C. § 47-06-03. Having concluded that possession could not be achieved prior to the extraction of the minerals, the defendants' claim of adverse possession and affirmative defense based on the statute of limitations were barred as a matter of law.
 

 [¶ 22] The district court also summarily determined that the defendants' asserted defense of laches was a valid defense to Tank's quiet title action. This Court has previously recognized that an individual who holds legal title to the property is not required to take action against an adverse claim that cannot ripen into a valid claim adverse to their title.
 
 See
 

 Grandin v. Gardiner,
 

 63 N.W.2d 128
 
 , 137 (N.D.1954). In
 
 Grandin
 
 , this Court recognized:
 

 In
 
 Bailey v. Hopkins
 
 ,
 
 152 N.C. 748
 
 ,
 
 67 S.E. 569
 
 , 570 [ (1910) ], it is said:
 

 "A landowner cannot be expected to bring action against every man who, while not in possession, shall declare he claims an interest in the property, under penalty to the owner after the lapse of 10 years of being barred of action for a later assertion of title."
 

 In
 
 Secret Valley Land Co. v. Perry
 
 ,
 
 187 Cal. 420
 
 ,
 
 202 P. 449
 
 , 451 [ (1921) ], the Supreme Court of California in considering both laches and the statute of limitations expressed itself pertinently as follows:
 

 "A defendant holding the legal title, or a paramount claim to the legal title, is not called upon to take action against a hostile claim which is not of a nature to ripen into a valid adverse title."
 

 *145
 

 Farmers' Loan & Trust Co. v. Denver, L. & G. R. Co
 
 .,
 
 126 F. 46
 
 ,
 
 60 C.C.A. 588
 
 [ (1903) ] ;
 
 Hays v. Marsh
 
 ,
 
 123 Iowa 81
 
 ,
 
 98 N.W. 604
 
 [ (1904) ].
 

 Id
 
 . Because Tank possessed valid title to the real property he was under no obligation to take action against the defendants because their royalty interests could not ripen into a valid adverse title to the real property. The conclusion that Tank's request to quiet title to the property was barred by the doctrine of laches was erroneous.
 

 [¶ 23] The defendants' assertion of the defense of laches with regard to royalty payments that have previously been made is a different question than the assertion of laches against Tank's quiet title action. Royalty payments accrued as the result of the operation of an oil well first in 1982 through 1983 and again from 1998 through the present date. Those payments have been made to the defendants. Until this quiet title action Tank had taken no action to recover the prior royalty payments.
 

 [¶ 24] Laches does not arise from a delay or lapse of time alone, but is a delay in enforcing one's rights which works a disadvantage to another.
 
 Sall v. Sall
 
 ,
 
 2011 ND 202
 
 , ¶ 14,
 
 804 N.W.2d 378
 
 . The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state.
 
 Loberg v. Alford
 
 ,
 
 372 N.W.2d 912
 
 , 919 (N.D. 1985). The party invoking laches has the burden of proving he was prejudiced because his position has become so changed during the delay that he cannot be restored to the status quo.
 
 Sall
 
 , at ¶ 14. Cases involving laches must stand or fall on their own facts and circumstances.
 
 Loberg
 
 , at 919. Laches is generally a question of fact.
 
 Bakken v. Duchscher
 
 ,
 
 2013 ND 33
 
 , ¶ 20,
 
 827 N.W.2d 17
 
 . Whether a party acted in good faith is also a question of fact.
 
 See
 

 Desert Partners IV, L.P. v. Benson
 
 ,
 
 2016 ND 37
 
 , ¶ 13,
 
 875 N.W.2d 510
 
 .
 

 [¶ 25] The defendants rely on a 1957 lawsuit filed by Tank's grandparents against the defendants' predecessors over title to the royalty interest to establish awareness of the dispute. The defendants also rely on division orders signed by Tank in 2008 and by his father in 1983 indicating royalty interests less than what Tank claims in this proceeding. The defendants assert they acted in good faith because a 2002 title opinion confirmed their title. The defendants argue they have been disadvantaged by the delay because numerous sources of testimonial and documentary evidence are no longer available. In response, Tank argues the defendants did not act in good faith because many of the deeds in their chain of title are quit claim deeds and some of the defendants acquired their interests after this litigation began. Tank also argues that the defendants did not act in good faith because they should have known the 1945 tax deed extinguished their predecessors' royalty interests, an assertion of law disputed by the defendants. Under the circumstances of this case material questions of fact and the inferences to be drawn from those facts remain and the imposition of summary judgment on the defendants' assertion of laches with regard to prior payments was not appropriate.
 

 V
 

 [¶ 26] We reverse the district court's amended judgment quieting title to the royalty interests in favor of the defendants and direct the entry of judgment quieting title in favor of Tank. We remand this case to the district court for determination of whether Tank is barred from the recovery
 
 *146
 
 of all, or some, of the royalty payments previously made to the defendants and, if not, the amount of the recovery to which Tank is entitled.
 

 [¶ 27] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.