Filed 1/28/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 14

John Riedlinger, Steam Brothers 

of Austin/Albert Lea, LLC, Dale Stroh, 

Kevin Vetter, K&M, Inc., Leo Horner, 

and Duane Leier, Plaintiffs and Appellees

v.

Steam Brothers, Inc., d/b/a 

Steam Brothers Carpet Cleaning, Defendant and Appellant

No. 20120111

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Rob A. Stefonowicz (argued) and John A. Cotter (on brief), 7900 Xerxes Avenue South, Minneapolis, MN 55431, for plaintiffs and appellees.

Benjamin J. Hasbrouck (argued), 51B Broadway, Suite 402, Fargo, N.D. 58102-4970, for defendant and appellant.

Emily Duke (on brief), 200 South 6th Street, Suite 4000, Minneapolis, MN 55402-1425, for defendant and appellant.

Riedlinger v. Steam Brothers, Inc.

No. 20120111

VandeWalle, Chief Justice.

[¶1] Steam Brothers, Inc., doing business as Steam Brothers Carpet Cleaning, appealed from a summary judgment in a declaratory judgment action by John Riedlinger, Dale Stroh, Kevin Vetter, Leo Horner, and Duane Leier, five individuals with separate license agreements creating business relationships with Steam Brothers (collectively referred to as “licensees”), in which the district court decided the clear and unambiguous language of the license agreements did not obligate the licensees to provide Steam Brothers and its current owner, Jerry Thomas, with certain business information and precluded Steam Brothers from terminating the license agreements absent mutual consent of the parties.  We reverse and remand, concluding the license agreements are ambiguous about the parties’ rights and obligations.

I

[¶2] In 1983, Adam Leier formed Steam Brothers, a Bismarck-based business for residential and commercial carpet cleaning and related services, including furniture and drapery cleaning and water and smoke damage remediation.  Steam Brothers registered “Steam Brothers” as a service mark
(footnote: 1) with the United States Patent and Trademark Office for use in connection with its carpet cleaning and related services, and Steam Brothers franchised independently owned businesses to use its cleaning system and service mark in designated geographic territories.  The five licensees are all relatives of Adam Leier and have each operated separate businesses using the Steam Brothers’ cleaning system and service mark in designated geographic territories in North Dakota, South Dakota, and Minnesota since the 1980s.  The licensees initially executed separate agreements with Steam Brothers and Adam Leier, which required each licensee to pay an on-going franchise fee to Steam Brothers.  According to Adam Leier, he provided each licensee extensive training under the Steam Brothers’ system, including on-the-job training and seminars in fiber identity, chemical use, cleaning methods, odor control, promotion, and advertising.  The licensees initially purchased cleaning chemicals and supplies directly from Steam Brothers, which Adam Leier said allowed him to monitor the licensees’ business operations and cleaning methods under the Steam Brothers’ system and service mark.

[¶3] According to Adam Leier, the licensees became dissatisfied with their business relationship with Steam Brothers in 1991, informing him they no longer wanted to pay Steam Brothers the on-going franchise fee, and he agreed to eliminate the fee and enter new license agreements with each licensee.  In May 1991, the licensees and Steam Brothers, through Adam Leier, executed separate license agreements, which stated the new agreements terminated and replaced the prior agreements and fully governed the parties’ relationship.  In 1996, Steam Brothers amended its license agreement with Kevin Vetter after legal proceedings about the scope of his designated territory.  As relevant to the issues in this case, Steam Brothers’ 1996 license agreement with Vetter is substantially the same as the 1991 agreements with the other four licensees.

[¶4] The operative license agreements said the respective licensees had been franchisees within the Steam Brothers’ cleaning system under a prior license agreement, and Steam Brothers and the licensees were “desirous of converting the said franchise relationship between the parties to a very different type of business relationship.”  Under the new agreements, the licensees were no longer required to pay Steam Brothers an on-going franchise fee; instead, each licensee paid Steam Brothers a lump sum of $12,000 “as a fee to terminate the prior License Agreement.”  The new agreements did not grant the licensees an ownership or proprietary right in Steam Brothers’ name, service mark, or other material.  Rather, the new agreements said the licensee had the “right to use any designs, devices, marks, service marks, trademarks, trade names, systems slogans or symbols connected with and including the name of Steam Brothers or A-1 Steam Brothers” in the licensee’s designated geographic territory.  The agreements said that in order to protect the goodwill and reputation of “Steam Brothers’ names, marks, other related material, and carpet cleaning and related system,” the licensee “shall conduct the subject business operation in a manner that reflects favorably on such names, marks, other material, and carpet cleaning and related system” and the licensee shall not “in any way be involved in any activity of any kind which negatively [a]ffects [Steam Brothers, its] franchises or affiliates, or the reputations or business activities related thereto.”

[¶5] The new agreements said Adam Leier may be available to consult the licensees for a consulting fee, but the licensees “shall no longer be entitled to any advertising materials, toll free number, visits, training, or other obligations of any kind from” Steam Brothers.  Under the new agreements, for five years from the date of any transfer of the licensees’ business to an unrelated entity or from termination of the agreement for any reason, the licensees agreed not to engage in the same or a substantially similar business.  During the term of the agreements, Steam Brothers and Adam Leier, or their successors, also agreed not to engage in the same or a substantially similar business in the licensees’ designated geographic territories.  The agreements also precluded Steam Brothers from divulging or communicating any information or knowledge about the licensees’ “customer names and addresses, business methods, operating procedures or programs or methods of promotion and sales,” which were communicated to Steam Brothers under the new agreements or under the prior agreements.

[¶6] Under the new agreements, the licensees acknowledged Steam Brothers would suffer irreparable injury if the licensees failed to maintain the standards or requirements regarding Steam Brothers’ name and service mark, and the licensees agreed if they anticipatorily or actually breached the agreement, Steam Brothers was entitled “in addition to any other remedies and damages available: (a) to an injunction to restrain any such violation and/or to compel specific performance . . . and (b) to attorneys’ fees and legal costs for the bringing and maintaining of such action.”  The new agreements said nothing in those agreements “shall be construed to prohibit [Steam Brothers] from pursuing any other remedy available to [Steam Brothers] for such breach, including the recovery of damages.”  The new agreements explained Steam Brothers and the licensees were not joint venturers, partners or agents of each other and “neither shall have the power to obligate the other, except as set forth” in the agreements.  The new agreements specified they “contain[ed] the entire understanding of the parties” and no agreements not embodied in them would be given any force or effect.  The agreements also identified their duration as “that period of time during which the Licensee, the Licensee’s corporate entity, or a member of the Licensee’s immediate family shall be involved in the subject business governed by this Agreement.”

[¶7] In October 2008, Adam Leier sold Steam Brothers to Jerry Thomas, who also owns a separate business that provides cleaning services similar to the services provided by the licensees.  According to some licensees, Steam Brothers wrote to them in August 2009, asserting they could only use Steam Brothers’ name and service mark for carpet cleaning.  The licensees claimed Steam Brothers thereafter asked them to provide a list of services they performed so Steam Brothers could determine whether the services constituted carpet cleaning and related services.  According to Thomas, the licensees had stopped buying chemicals and other supplies from Steam Brothers, and he had no information about the type and method of work the licensees were doing under Steam Brothers’ name and service mark.  Thomas claimed he also had received some complaints and negative comments about the quality of work done by some of the licensees under Steam Brothers’ name.  Steam Brothers thereafter sought certain business information from the licensees, including chemicals used, customer lists, brochures, marketing materials, business methods, and operating procedures.  Steam Brothers claimed the information was necessary to monitor the licensees’ use of Steam Brothers’ service mark.  The licensees refused to provide the information to Steam Brothers, and Steam Brothers thereafter sent Leo Horner a letter, stating his license agreement was terminated effective October 5, 2010, because he refused to meet with Thomas or to provide Steam Brothers with certain business information.

[¶8] In a complaint dated October 11, 2010, the five licensees sued Steam Brothers for a declaration of their rights and obligations under the license agreements.  The licensees claimed they were not obligated to provide their business information to Steam Brothers under the terms of the license agreements, the agreements did not include any implied terms, and Steam Brothers was not entitled to terminate the agreements for failure to provide the business information.  The licensees sought to enjoin Steam Brothers from terminating the agreements for failing to provide the requested information.  On October 29, 2010, Steam Brothers wrote Riedlinger, Stroh, Vetter, and Duane Leier, requesting certain business information and stating their license agreements would be terminated effective November 5, 2010, if they failed to provide the requested information.  The licensees did not provide Steam Brothers with the requested information.  Steam Brothers thereafter answered the licensees’ complaint for declaratory relief and counterclaimed for breach of contract and trademark infringement.  Steam Brothers alleged the licensees had breached their license agreements, because they were operating their businesses in a manner that reflected unfavorably on Steam Brothers’ service mark.  Steam Brothers also claimed it had lawfully terminated the license agreements and the licensees’ subsequent unauthorized use of Steam Brothers’ service mark constituted trademark infringement.  After a discovery dispute, the court granted the licensees a protective order, preventing Steam Brothers from discovering the licensees’ customers, customer lists, referral sources, marketing materials, and information about services provided, certifications, and compliance with industry standards.

[¶9] The licensees moved for summary judgment.  Steam Brothers resisted the motion and sought a continuance for further discovery under N.D.R.Civ.P. 56(f).  The district court denied Steam Brothers’ request for a continuance and granted the licensees summary judgment.  The court concluded the license agreements were clear and unambiguous and did not require the licensees to provide the requested business information to Steam Brothers.  The court also concluded the license agreements could not be terminated without the parties’ mutual consent and dismissed Steam Brothers’ counterclaims for breach of contract and trademark infringement.

II

[¶10] Our standard of review of summary judgment is well-established:

Summary judgment is a procedural device used to promptly resolve a controversy on the merits without a trial if either party is entitled to judgment as a matter of law and the material facts are undisputed or if resolving the disputed facts would not alter the result.  “‘Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts.’”  Whether a district court has properly granted a motion for summary judgment is a question of law, which this Court reviews de novo on the record. 

When we review a district court’s decision on a motion for summary judgment, we view the evidence in a light most favorable to the party opposing the motion and give the opposing party all favorable inferences.  In determining whether summary judgment is appropriate, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence.  The moving party must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law.  A party resisting the motion for summary judgment “cannot merely rely on the pleadings or other unsupported conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact.”

Burris Carpet Plus, Inc. v. Burris
, 2010 ND 118, ¶¶ 10-11, 785 N.W.2d 164 (citations omitted).

[¶11] A district court’s decision to deny additional discovery under N.D.R.Civ.P. 56(f), as well as a protective order limiting discovery, are reviewed for an abuse of discretion.  
Burris Carpet
, 2010 ND 118, ¶ 49, 785 N.W.2d 164.  A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.  
In re Conservatorship of T.K.
, 2009 ND 195, ¶ 10, 775 N.W.2d 496.

III

[¶12] Steam Brothers argues the district court erred in construing the parties’ current license agreements and deciding the licensees were not obligated to provide Steam Brothers with the requested business information.  Steam Brothers asserts there are factual disputes under N.D.C.C. §§ 9-07-20 and 9-07-21 about whether the agreements include implied terms that reasonably obligate the licensees to provide Steam Brothers with the requested information.  Steam Brothers also contends there are fact issues about whether the licensees were obligated to provide Steam Brothers with the requested information under North Dakota law applying custom and usage.  Steam Brothers claims the licensees breached their obligation to provide the requested information and it was entitled to terminate the agreements as a result of their breach.  Steam Brothers further argues the court erred in granting the licensees summary judgment without providing Steam Brothers an adequate opportunity for discovery.  The licensees respond additional discovery was not necessary, because the parties’ current license agreements are fully integrated and clearly and unambiguously do not require them to provide Steam Brothers with the requested information or permit Steam Brothers to unilaterally terminate the agreements.

[¶13] The parties’ arguments about additional discovery are intertwined with the underlying interpretation of their current license agreements, and we therefore consider the discovery issue in conjunction with the interpretation of agreements that explicitly state they “shall be governed by and construed under and in accordance with the laws of the State of North Dakota.”  

[¶14] Under North Dakota law, contracts are construed to give effect to the parties’ mutual intent when contracting.  N.D.C.C. § 9-07-03.  “The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity.”  N.D.C.C. § 9-07-02.  “When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible.”  N.D.C.C. § 9-07-04.  A contract must be interpreted as a whole to give effect to each clause and part, and words in a contract must be understood in their ordinary and popular sense unless used by the parties in a technical sense, or unless a special meaning is given to the words by usage.  N.D.C.C. §§ 9-07-06 and 9-07-09.  “A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates.”  N.D.C.C. § 9-07-12.  “Stipulations which are necessary to make a contract reasonable or conformable to usage are implied in respect to matters concerning which the contract manifests no contrary intention.”  N.D.C.C. § 9-07-20.  “All things that in law or usage are considered as incidental to a contract or as necessary to carry it into effect are implied therefrom, unless some of them are mentioned expressly therein[, and i]n such case, all other things of the same class are deemed to be excluded.”  N.D.C.C. § 9-07-21.

[¶15] In 
Langer v. Bartholomay
, 2008 ND 40, ¶ 12, 745 N.W.2d 649 (citations omitted), we described applicable standards for interpreting contracts:

Interpretation of a contract is a question of law, if the parties’ intent can be determined from the language of the contract alone.  Whether a contract is ambiguous is a question of law, which we review independently.  A contract is ambiguous if rational arguments can be made for different interpretations.  If a contract is ambiguous, extrinsic evidence may be considered to determine the parties’ intent, and the terms of the contract and the parties’ intent become questions of fact.  “‘If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language.’”

[¶16] The district court decided the parties’ current license agreements clearly and unambiguously did not require the licensees to provide Steam Brothers with the requested business information and could not be terminated without the parties’ mutual consent.  The court explained the agreements neither authorized nor required the licensees to divulge any information about the day-to-day operations of their respective businesses, but the parties’ prior franchise agreements required disclosure of that information.  The court stated the parties left the current agreements silent about the licensees’ obligation to disclose business information, which was a departure from the requirement in the prior agreements and was consistent with their stated desire to convert the prior franchise relationship to a very different type of business relationship.  The court compared the current license agreements with the prior franchise agreements and based on that comparison and the court’s assessment of the circumstances under which the new agreements were executed, the court said “it can be concluded that the disclosure of the requested information is not required under the current license agreements.”  The court also explained that interpreting the license agreements to imply a requirement for the licensees to provide Steam Brothers with the requested information would be absurd.  The court decided the parties intended that the current agreements did not require the licensees to provide Steam Brothers with information about the licensees’ businesses or customers.

[¶17] Although the district court said the license agreements were clear and unambiguous, the court considered some extrinsic evidence about the parties’ prior franchise relationship and compared the prior and the current agreements to determine the parties’ intent.  In construing the parties’ current agreements, the court effectively examined the circumstances under which the new agreements were made and the matter to which they relate under N.D.C.C. § 9-07-12.  This Court has recognized that “[w]hen a contract is ambiguous, circumstances at the time of contracting may be used as evidence to construe it.”  
Williston Educ. Ass’n v. Williston Pub. Sch. Dist.
, 483 
N.W.2d 567, 570 (N.D. 1992) (citing N.D.C.C. § 9-07-12 and 
Heitkamp v. Milbank Mut. Ins. Co.
, 383 N.W.2d 834, 836 (N.D. 1986)).  
See also
 
Walle Mut. Ins. Co. v. Sweeney
, 419 N.W.2d 176, 180 (N.D. 1988).  
The district court’s reliance on extrinsic evidence to construe the parties’ current agreements is contrary to its conclusion the agreements were clear and unambiguous and to the applicable rules for granting summary judgment.

[¶18] Our interpretation of the parties’ current license agreements initially focuses on the four corners of those documents.  The current agreements do not explicitly include language addressing the licensees’ obligation to provide information about their businesses to Steam Brothers.  The licensees essentially claim the parties’ intentionally left the current agreements silent about their obligation to provide Steam Brothers with business information.  The licensees’ assertion represents one reasonable interpretation of the agreements.  However, the agreements also require the licensees to “conduct the subject business operation in a manner that reflects favorably on [Steam Brothers’] names, marks, other material, and carpet cleaning and related system” and say the licensees shall not “in any way be involved in any activity of any kind which negatively [a]ffects [Steam Brothers, its] franchises or affiliates, or the reputations or business activities related thereto.”  The clear import of that language does not contemplate unfettered and uncontrolled use of Steam Brothers’ service mark.  Although the current agreements state they constitute the entire understanding of the parties and fully govern the parties’ relationship, the agreements are nevertheless unclear about Steam Brothers’ control of its service mark and the licensees’ obligation to provide business information to Steam Brothers in view of the explicit requirements for the licensees to conduct their businesses in a manner that reflects favorably on Steam Brothers and in a manner that does not negatively affect Steam Brothers’ reputation or business activities.  The licensees’ reliance on language that “neither [party] shall have the power to obligate the other, except as is set forth in this Agreement” to unambiguously preclude any obligation to provide business information to Steam Brothers is misplaced.  The entire context of that language says the parties “are not joint ventures, partners, or agents of each other, and neither shall have the power to obligate the other, except as set forth” in the agreement.  That clause suggests a reference to the power of one party to obligate the other to third parties and does not clearly and unambiguously  limit the licensees’ obligation to provide business information to Steam Brothers.

[¶19] The language of the current license agreement explicitly provides Steam Brothers with some control over the licensees’ use of Steam Brothers’ name and service mark, and given that language, we conclude the agreement, when read as a whole, is not clear and unambiguous about the extent of the licensees’ obligations.  According to Adam Leier, he insisted the current license agreements include language protecting and promoting the goodwill and reputation of Steam Brothers’ name, marks, franchise, and business reputation.  Adam Leier admitted the new license agreements did not specifically include language for enforcing those requirements, but he claimed he intended to be able to monitor the licensees’ compliance with the standards and requirements in the license agreements and expected to be able to obtain information for monitoring the licensees’ compliance with the requirements.  Adam Leier also indicated the confidentiality provisions in the agreements, which preclude Steam Brothers from divulging certain business information communicated directly or indirectly by the licensees to Steam Brothers under the prior or current agreements, contemplates Steam Brothers may obtain some business information from the licensees.  The confidentiality provisions can reasonably be given some meaning if disclosure of some information to Steam Brothers is required.  However, the meaning of that confidentiality language is unclear if the licensor may not obtain any business information under the agreements, and the application of the provisions authorizing Steam Brothers to pursue any other available remedy for a breach, including damages, also would be unclear if the licensor was unable to obtain any information about how the licensees were operating their businesses under Steam Brothers’ service mark.

[¶20] Considering the parties’ current license agreements as a whole, we conclude rational arguments can be made for different interpretations of those agreements.  We therefore conclude the current agreements are ambiguous, and the district court erred in deciding as a matter of law the parties intended that the agreements not require the licensees to provide Steam Brothers with business information for monitoring the licensees’ use of Steam Brothers’ service mark.  The resolution of the parties’ intent is a question of fact, which is inappropriate for summary judgment.  
See
 
Langer
, 2008 ND 40, ¶ 12, 745 N.W.2d 649.

IV

[¶21] Steam Brothers also argues the district court erred in construing the parties’ current license agreements and deciding the agreements could not be terminated without the parties’ mutual consent.

[¶22] The district court explained “it is reasonable to conclude that the parties intended to have a very different method or standard for termination of the license agreements than that included in the [prior] franchise agreements” and concluded the agreements could not be terminated unless both parties consented to the termination.

[¶23] A party breaches a contract when the party fails to perform a contractual duty when due.  
Langer
, 2008 ND 40, ¶ 11, 745 N.W.2d 649.  This Court has generally recognized the material breach of a contract by one party gives the non-breaching party a right to terminate the contract.  
See
 
Keller v. Hummel
, 334 
N.W.2d
 200, 203 (N.D. 1983); 
Tower City Grain Co. v. Richman
, 262 
N.W.2d
 22, 24 (N.D. 1978).  Some authorities have recognized that license agreements may include specific language giving  the licensee an “irrevocable” and “perpetual” license that cannot be terminated even for a licensee’s material breach of the agreement.  
See
 
Nano-

Proprietary, Inc. v. Canon, Inc.
, 537 F.3d 394, 400-01 (5th Cir. 2008) (holding license agreement granting licensee irrevocable, fully paid-up, and perpetual license could not be terminated even for licensee’s material breach of agreement).

[¶24] Here, the parties’ license agreements specifically say the “term . . . shall be that period of time during which the Licensee, the Licensee’s corporate entity, or a member of the Licensee’s immediate family shall be involved in the subject business.”  However, the agreements also provide:

The Licensee recognizes that irreparable injury will result if the Licensee does not maintain the standards or requirements [pertaining to protecting Steam Brothers’ goodwill and reputation and conducting business in a manner that reflects favorably on Steam Brothers’ service mark] or if the Licensee breaches any of the terms and provisions of this Agreement.  The Licensee therefore agrees that, in the event that the Licensee anticipatorily or actually breaches any such conditions, terms or provisions, [Steam Brothers] shall be entitled, in addition to any other remedies and damages available: (a) to an injunction to restrain any such violation and/or to compel specific performance of the terms and conditions hereof and (b) to attorneys’ fees and legal costs for the bringing and maintaining of such action.  Nothing herein contained shall be construed to prohibit [Steam Brothers] from pursuing any other remedy available to [Steam Brothers] for such breach, including the recovery of damages.

Moreover, language in a non-competition provision precludes the licensee from engaging in a similar business for five years from “termination of this Agreement for any reason.”

[¶25] The licensees claim the language about the term of the license agreements gives them a “lifelong” license and does not give Steam Brothers a right to unilaterally terminate the agreements.  According to Adam Leier, the agreements had no specific termination provision, but he intended to be able to terminate a licensee’s agreement if the licensee breached the agreement.  Under the language of the agreements for breaches, Steam Brothers is entitled, in addition to any other remedies and damages available, to injunctive relief to restrain violation of the agreement and to compel specific performance, and Steam Brothers may pursue any other remedy available for a breach, including damages.  The broad language about remedies does not preclude a remedy of termination for a material breach and no other provisions in the agreements explicitly limit the grounds for termination of the agreements.

[¶26] We conclude rational arguments can be made for both parties’ interpretations of the license agreements.  We therefore conclude the language in the parties’ current license agreements, when read together, is not clear and unambiguous about termination of the agreements for breach.  The resolution of the parties’ intent is a question of fact which is inappropriate for summary judgment.  
See
 
Langer
, 2008 ND 40, ¶ 12, 745 N.W.2d 649.  We therefore reverse the summary judgment and remand for further proceedings on this issue.

[¶27] We recognize this declaratory judgment action includes counterclaims for breach of contract and trademark infringement as well as allegations that the license agreements have been terminated.  Because we have concluded the license agreements are ambiguous about the licensees’ obligations to provide business information to Steam Brothers and about termination, we conclude any discussion about the counterclaims and the array of potential remedies relating to termination is premature.  
See
 
Bangen v. Bartelson
, 553 N.W.2d 754, 756-57 (N.D. 1996) (recognizing N.D.C.C. § 32-23-03 of the provisions for declaratory judgments authorizes a court to construe a contract before or after breach).

V

[¶28] Because of our resolution of the issues raised in this appeal, we conclude Steam Brothers is entitled to additional discovery on issues relating to the parties’ intent for purposes of construing the ambiguous license agreements.  To the extent Steam Brothers alleges specific instances of a breach of the licensees’ obligation to conduct their business in a manner that reflects favorably on Steam Brothers’ service mark and the licensees’ obligation to not be involved in any activity that negatively impacts Steam Brothers, we further conclude Steam Brothers is entitled to limited discovery on those issues, which the district court may supervise through in camera proceedings.

VI

[¶29] We reverse the judgment and remand for further proceedings.

[¶30] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Thomas E. Merrick, D.J.

[¶31] The Honorable Thomas E. Merrick, D.J., sitting in place of Sandstrom, J., disqualified.

FOOTNOTES
1:
A “service mark” means “any word, name, symbol, or device or any combination thereof used by a person to identify and distinguish the services of one person, including a unique service, from the services of others, and to indicate the source of the services, even if that source is unknown.”  N.D.C.C. § 47-22-01(5).